## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

U.S. BANK TRUST COMPANY,   :
NATIONAL ASSOCIATION, AS  :
TRUSTEE FOR VELOCITY     :
COMMERCIAL CAPITAL      :
LOAN TRUST 2023-4         :
c/o Velocity Commercial Capital, :
LLC                          :   **Property Address:**
2945 Townsgate, Suite #110    :   **5715 Capitol Drive**
Westlake Village, CA 91361,    :   **Milwaukee, WI 53216**
                               :
                **Plaintiff,**  :   **Parcel No.:**
                               :   **266-0029-000**
**vs.**                              :
                               :
**MARIA J. WOODRUFF, an**   :
**individual**                   :
**4935 N. 52ⁿᵈ Street**        :
**Milwaukee, WI 53218,**    :
                               :
**COLUMBIA SAVINGS AND**   :
**LOAN ASSOCIATION**      :
**c/o Ernest Jones, President and** :
**Chief Executive Officer**    :
**2020 W Fond du Lac Ave.**   :
**Milwaukee, WI 53205,**    :
                               :
**CITY OF MILWAUKEE,**     :
**WISCONSIN**             :
**c/o Office of the Mayor**    :
**City Hall**              :
**200 E. Wells Street, Room 201** :
**Milwaukee, WI 53202,**    :

{05354979-2 }

WISCONSIN ELECTRIC                    :
POWER COMPANY                         :
c/o Corporate Creations Network,      :
Inc., Registered Agent                :
301 S. Bedford St.                    :
Ste. 1                                :
Madison, WI 53703,                    :
                                      :
STATE OF WISCONSIN,                   :
DEPARTMENT OF                         :
WORKFORCE                             :
DEVELOPMENT                           :
c/o Amy Pechacek, Secretary           :
201 E. Washington Ave                 :
Madison, WI 53707,                    :
                                      :
   Mailing Address:                   :
   STATE OF WISCONSIN,                :
   DEPARTMENT OF                      :
   WORKFORCE                          :
   DEVELOPMENT                        :
   c/o Amy Pechacek, Secretary        :
   P.O. Box 7946                      :
   Madison, WI 53707                  :
                                      :
                   Defendants.        :
                                      :

## COMPLAINT ON PROMISSORY NOTE, FOR FORECLOSURE, FOR APPOINTMENT OF A RECEIVER, AND FOR OTHER RELIEF

Plaintiff U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-4 (the "Plaintiff"), through undersigned counsel, states for its Complaint against the above defendants:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is the duly appointed trustee for the real estate mortgage investment conduit trust whose assets include the instruments that are the subject of the above-captioned matter. According to the United States Supreme Court, when a trustee files a lawsuit in its own name, the citizenship of the trustee is all that matters for diversity purposes. Navarro Savings Ass'n v. Lee, 446 U.S. 458 (1980). The citizenship of a national banking association is determined by the state designated in its articles of association as its main office. See U.S. Bank National Association v. UBS Real Estate Securities Inc., 205 F.Supp.3d 386, 411 (S.D.N.Y. 2016); Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318 (2006). In this matter, the Plaintiff is a national banking association formed under the laws of the United States of America, specifically the National Bank Act, 12 U.S.C. § 1, et seq., Charter No. 23412. The Plaintiff's main office, as stated in its articles of association, is in Portland, Oregon.  As the citizenship of a national banking association is determined by the state designated in its articles of association as its main office, the Plaintiff is a citizen of the State of Oregon for the purposes of diversity jurisdiction herein.

2.      Defendant Maria J. Woodruff, an individual (the "Borrower") is an individual domiciled in the State of Wisconsin.

3.      Defendant Columbia Savings and Loan Association is a banking corporation existing under the laws of the State of Wisconsin with its principal place of business located in Milwaukee, Wisconsin.

4.      Defendant City of Milwaukee, Wisconsin is a municipal corporation of the State of Wisconsin.

5.      Defendant Wisconsin Electric Power Company is a corporation existing under the laws of the State of Wisconsin with its principal place of business located in Milwaukee, Wisconsin.

6.      Diversity jurisdiction is proper pursuant to 28 USC § 1332 as the Plaintiff and the Borrower are residents of different states and the amount in controversy exceeds $75,000.00.

7.      Venue is proper is this district pursuant to 28 U.S.C. § 1391(b) as both the Borrower and the Property (as defined below) reside herein.

## COUNT ONE – PROMISSORY NOTE

8.      The Plaintiff restates and incorporates by reference Paragraphs 1 through 7 of its Complaint as if fully rewritten herein.

{05354979-2 }

4

9.    The Plaintiff is in possession of the original copy of and is entitled to enforce a certain Term Note (the "Note") in the original principal amount of $150,000.00 dated September 29, 2023 and executed by the Borrower and originally payable to Velocity Commercial Capital, LLC (the "Original Lender"). A copy of the Note with Allonge affixed thereto is attached as Exhibit A.

10.    The Note is in default as a result of the Borrower's failure to make payments when due. Among other things, the Borrower failed to make the June 1, 2024 payment.

11.    As a result of the Borrower's default, the Plaintiff has accelerated all unpaid principal amounts and all accrued and unpaid interest due under the Note.

12.    All conditions precedent to the Plaintiff's enforcement of the Note have occurred.

13.    As a result of the above default and acceleration, the Plaintiff is presently owed on the Note and the Mortgage (as that term is defined below) from the Borrower the following amounts as of September 30, 2024:

| | |
|---|---|
| Principal | $149,447.81 |
| Regular Interest Accrued | $6,999.15 |
| Prepayment Penalty | $7,472.39 |
| Late Charges | $577.70 |
| Returned Payment Charge | $25.00 |
| Default Interest | $2,009.05 |
| Foreclosure Fees and Costs | $6,325.00 |
| **TOTAL as of 9/30/2024** | **$172,856.10** |

plus regular interest that continues to accrue at the rate of 11.24% per annum, plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter.

## COUNT TWO – FORECLOSURE OF MORTGAGE

14.    The Plaintiff restates and incorporates by reference Paragraphs 1 through 13 of its Complaint as if fully rewritten herein.

15.    The Plaintiff is the assignee of a Commercial Mortgage, Security Agreement and Assignment of Rents and Leases (the "Mortgage"), dated September, 2023 and executed by the Borrower to secure repayment of the Note. The Mortgage was recorded on October 2, 2023 as Instrument No. 11370884 of the Official Records of Milwaukee County, Wisconsin. A copy of the Mortgage is attached as Exhibit B.

{05354979-2 }

16.     The Original Lender assigned the Mortgage to the Plaintiff by virtue of an Assignment of Commercial Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Assignment") recorded on November 16, 2023 as Instrument No. 11382029 of the Official Records of Milwaukee County, Wisconsin. A copy of said Assignment is attached as Exhibit C.

17.     The Mortgage constitutes a valid lien upon the real estate and improvements commonly known as 5715 West Capitol Drive, Milwaukee, Wisconsin 53216 (the "Property").

18.     As a consequence of the Borrower's default as described above, the conditions of defeasance contained in the Mortgage have been broken, and the Plaintiff is entitled to have the Mortgage foreclosed.

19.     All conditions precedent to the Plaintiff's enforcement of the Mortgage have occurred.

20.     The Defendants all may claim an interest in the Property.

**COUNT THREE – ASSIGNMENT OF LEASES AND RENTS**

21.     The Plaintiff restates and incorporates by reference Paragraphs 1 through 20 of its Complaint as if fully rewritten herein.

22.     To further secure repayment of the Note, and in the same document as the Mortgage, the Borrower executed an irrevocable and unconditional assignment of the leases and rents of the Property (the "Assignment of Leases").

23.     The Assignment of Leases constitutes a present, absolute, and unconditional assignment by the Borrower of all rents and revenues of the Property (collectively, the "Rents").

24.     The Borrower's license to collect any Rents of the Property has been revoked by virtue of the defaults described above.

25.     The Borrower has not accounted for or turned over any Rents collected since default.

26.     As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff has revoked the license it granted the Borrower in the Assignment of Rents to collect the Rents, and the Plaintiff is now entitled to collect and receive all Rents from the Property and all Rents that the Borrower has collected since default.

27.     All conditions precedent to the Plaintiff's enforcement of the Assignment of Leases have occurred.

{05354979-2 }

## COUNT FOUR – POSSESSION OF COLLATERAL UNDER SECURITY AGREEMENT

28.     The Plaintiff restates and incorporates by reference Paragraphs 1 through 27 of its Complaint as if fully rewritten herein.

29.     To further secure repayment of the Note, and as part of the same transaction and in the same document as the Mortgage, the Borrower pledged all personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Security Interest").

30.     The Security Interest constitutes a valid lien on all the personal property that is part of the Property that is subject to a security interest pursuant to the Uniform Commercial Code (the "Personal Property").

31.     As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Plaintiff is entitled to exercise all its rights under the Security Interest and gain immediate possession of all the Personal Property or, in the alternative, have those items included in the appraisal of the Property and sold or auctioned off as part of the Property.

32.     All conditions precedent to the Plaintiff's enforcement of the Security Interest have occurred.

## COUNT FIVE – APPOINTMENT OF A RECEIVER

33.     The Plaintiff restates and incorporates by reference Paragraphs 1 through 32 of its Complaint as if fully rewritten herein.

34.     The terms of the Mortgage and Wisconsin law entitle the Plaintiff to the appointment of a receiver for the Property upon the default of the Borrower.

35.     As a consequence of the Borrower's failure to make principal, interest, and other payments when due under the Note, the Borrower is in default of the terms of the Mortgage.

36.     As a result of the above-described defaults, the Plaintiff is entitled to the appointment of a receiver over the Property, the Rents, and the Personal Property pledged under the Security Interest.

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1.     On Count One, for a judgment against the Borrower for the following amounts September 30, 2024:

| | |
|---|---|
| Principal | $149,447.81 |
| Regular Interest Accrued | $6,999.15 |
| Prepayment Penalty | $7,472.39 |
| Late Charges | $577.70 |
| Returned Payment Charge | $25.00 |
| Default Interest | $2,009.05 |
| Foreclosure Fees and Costs | $6,325.00 |

{05354979-2 }

| TOTAL as of 9/30/2024 | $172,856.10 |
| --- | --- |

plus regular interest that continues to accrue at the rate of 11.24% per annum, plus default interest that continues to accrue at the rate of 4.0% per annum, plus fees and advances that continue to accrue, plus the Plaintiff's attorney fees and costs accrued to date, and those which it will continue to accrue thereafter;

2.      On Count Two, that the Mortgage be adjudged a valid lien upon the Property; and that said lien be foreclosed; and that the Property be ordered sold; and that Plaintiff be paid out of the proceeds of such sale; and for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interest in the Property or be forever barred from asserting the same;

3.      On Count Three, for an order that the Plaintiff is entitled to exercise all its rights under the Assignment of Leases and further ordering the Borrower to turn over all Rents it is holding and which it has collected since the default, and that the Plaintiff may receive and collect all Rents from the Property going forward;

4.      On Count Four, for an order granting the Plaintiff possession of the Personal Property or, in the alternative, to include the Personal Property in the appraisal of the Property and auctioned off as part of the Property;

5.      On Count Five, for the appointment of a receiver for the Property, the Rents, and the Personal Property pledged under the Security Interest;

6.      On all Counts, for interest, its costs, attorney fees, and expenses;

7.      On all Counts, for all other relief to which the Plaintiff is entitled in law and in equity.

Date: October 24, 2024

Respectfully submitted,

*/s/ Zachary D. Prendergast*
Zachary D. Prendergast
*Attorneys for Plaintiff U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-4*
ROBBINS KELLY PATTERSON & TUCKER
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
Phone:  (513) 721-3330
Fax:      (513) 721-5001
E-Mail: frobbins@rkpt.com
E-Mail: zprendergast@rkpt.com

{05354979-2 }

# EXHIBIT A



## Term Note

Loan No. ████████

**September 29, 2023**

**$150,000.00**

## 1. Promise to Pay

For value received, the undersigned, **Maria J. Woodruff, an individual**, with an address of **4935 N 52nd Street, Milwaukee, Wisconsin 53218** (the *"Borrower"*), promises to pay to the order of Velocity Commercial Capital, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Road, Suite 295, Westlake Village, CA 91362 (together with its successors and assigns, the *"Lender"*), the principal amount of **One hundred fifty thousand and 00/100 dollars ($150,000.00)** on or before **October 1, 2053** (the *"Maturity Date"*), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows: **$1,455.75** commencing on **November 1, 2023**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall bear interest thereon at a per annum rate equal to **11.24%**.

## 2. Amortization Period

The calculation of the payment amount is based on a **360 month** amortization period.

## 3. Payment Delivery; Interest Accrual Basis

Principal and interest shall be payable at Lender's main office or at such other place as Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

## 4. Prepayment Charge

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to Lender. In the event of any prepayment of this Note at any time through October 1, 2024 (the *"Prepayment Charge Expiration Date"*) whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of Lender, pay a *"fixed rate prepayment charge"* equal to the product of (a) the principal amount so prepaid and (b) the percentage set forth in the table below for any prepayment made during the indicated period. No Prepayment Premium will be due if (a) prior to the Prepayment Charge Expiration Date, a prepayment amount received plus all other prepayment amounts received in the most recent 12 months is not greater than 20% of the Principal Amount of the Note, or (b) a prepayment is made in whole or in part after the Prepayment Charge Expiration Date.

For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of the month.

| Period | Percentage |
|---|---|
| September 29, 2023 - October 1, 2024 | 5% |

After the last period indicated in the above table this Note may be prepaid in whole or in part without any prepayment charge.

Note-Commercial
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

10/2020
Page 1 of 4

## 5. Default

At the option of Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an *"Event of Default"*): (1) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor hereof to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor hereof under any other loan document delivered by the Borrower or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower or any guarantor with Lender; (2) failure of the Borrower or any guarantor hereof to maintain aggregate collateral security value satisfactory to Lender; (3) default of any material liability, obligation or undertaking of the Borrower or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower or any guarantor hereof shall be determined by Lender to have been false or misleading in any material respect when made; (5) if the Borrower or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the division, merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower or any guarantor hereof and, if the Borrower or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon Lender of a writ in which Lender is named as trustee of the Borrower or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor hereof; or (13) the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor hereof to Lender has been or may be impaired.

## 6. How Payments Are Applied

Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as Lender may determine. The Borrower hereby authorizes Lender to charge any deposit account which the Borrower may maintain with Lender for any payment required hereunder without prior notice to the Borrower.

## 7. Interest Rate Not To Exceed Legal Limit

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

## 8. Business/Commercial Purpose

**The Borrower represents to Lender that the primary proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224. The primary purpose of the Note and the primary proceeds of the Note is for business purposes.**

## 9. Lien and Setoff

The Borrower grants to Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from Lender to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of Lender, whether for safekeeping or otherwise, or in transit to or from Lender (regardless of the reason Lender had received the same or whether Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to Lender and such deposits and other

Note-Commercial
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

Case 2:24-cv-01363-JPS    Filed 10/24/24    Page 14 of 36    Document 1

10/2020
Page 2 of 4

sums may be applied or set off against such liabilities and obligations of the Borrower to Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Lender.

## 10. Waivers

No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and any other party obligated on account of this Note by contract, by operation of law or otherwise (the Borrower and each Borrower, if more than one, and each such other party, an *"Obligor"*) regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waive all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including, without limitation, Section 815.20 of the *Wisconsin Statutes*.

## 11. Indemnification

The Borrower shall indemnify, defend and hold Lender and its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless against any claim brought or threatened against any Indemnitee by the Borrower or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of Lender's relationship with the Borrower (each of which may be defended, compromised, settled or pursued by Lender with counsel of Lender's selection, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of Lender.

## 12. Costs and Expenses, Default Rate, Late Charge

The Borrower agrees to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4% plus the rate provided for herein. If any payment due under this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums due under this Note (and without limiting Lender's other remedies on account thereof), a late charge equal to 5% of such unpaid amount.

## 13. Binding Effect, Joint and Several Liability, Complete Agreement

This Note shall be binding upon the Borrower and upon its heirs, successors, assigns and legal representatives, and shall inure to the benefit of Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any Obligor are joint and several; provided, however, the release by Lender of the Borrower or any one or more Obligors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any Obligor are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and Obligor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower authorizes Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

## 14. Further Assurances

The Borrower will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights

Note-Commercial
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

10/2020
Page 3 of 4

contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to Lender the security interest in any collateral securing this Note or to comply with applicable statute or law.

## 15. Governing Law

This Note shall be governed by the laws of the State of Wisconsin.

## 16. Section Headings

Section headings are for reference only and are not intended to affect the interpretation of the provisions of this Note.

## 17. Notices

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Bank, or if mailed by first class, registered, or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

## 18. Jurisdiction and Venue

The Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Wisconsin, over any suit, action or proceeding arising out of or relating to this Note. The Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, address shown in the records of Lender or (ii) by serving the same upon the Borrower(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower.

## 19. Waiver of Jury Trial

**THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER TO LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER AND LENDER EACH CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

## SIGNATURES

Executed under seal as of September 29, 2023.

**Borrower**

_Maria J. Woodruff_         9-29-23
**Maria J. Woodruff**         **Date**
                                _Seal_

Note-Commercial
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

10/2020
Page 4 of 4

# ALLONGE TO PROMISSORY NOTE

Allonge to $150,000.00 Promissory Note dated September 29, 2023, executed by Maria J. Woodruff, as Borrower, in favor of Velocity Commercial Capital, LLC, a California Limited Liability Company, as Lender

PAY TO THE ORDER OF U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-4 WITHOUT RECOURSE

Dated  as of 01/09/2024

**Velocity Commercial Capital, LLC, a California Limited Liability Company**

By: _____

Name: Ariana Beltran

Title: Post-Closing Supervisor

Loan Number: ███████████

# EXHIBIT B

**Name and Return Address:**
Velocity Commercial Capital, LLC
PO Box 7089
Westlake Village, CA 91359 - 7089

**Parcel Number:** 2660029000

DOC # 11370884
RECORDED
10/02/2023 06:11 AM
ISRAEL RAMON
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: 30.00
TRANSFER FEE:
FEE EXEMPT #:
***This document has been
electronically recorded and
returned to the submitter.***

**Commercial Mortgage, Security Agreement and Assignment of Leases and Rents**

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this *"Mortgage"*) is entered into as of September 29, 2023, between Maria J. Woodruff, with an address of 4935 N 52nd Street, Milwaukee, Wisconsin 53218 (the *"Mortgagor"*) and Velocity Commercial Capital, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Road, Suite 295, Westlake Village, California 91362 (the *"Lender"*).

The real property which is the subject matter of this Mortgage has the following address(es): 5715 West Capitol Drive, Milwaukee, WI 53216-2257 (the *"Address(es)"*).

## 1. Mortgage, Obligations and Future Advances

**1.1 Mortgage.** For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to Lender and its successors and assigns with POWER OF SALE forever, all of Mortgagor's right, title and interest in and to the Property described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to Lender and all obligations respecting that certain Term Note, dated September 29, 2023, by Maria J. Woodruff in favor of Lender in the original principal amount of $150,000.00 (the *"Note"*; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the *"Loan Documents"*), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

**1.2 Security Interest in Property.** As continuing security for the Obligations (as hereafter defined) the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the *Uniform Commercial Code of Wisconsin* (the *"Uniform Commercial Code"*) as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823,3,0,5176-J20210329Y

03/2021
Page 1 of 16

**1.3 Collateral Assignment of Leases and Rents.** The Mortgagor hereby irrevocably and unconditionally assigns to Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and Lender exercises its rights and remedies to collect such rents as set forth herein.

**1.4 Conditions to Grant.** Lender shall have and hold the above granted Property unto and to the use and benefit of Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

**1.5 Property.** The term *"Property"*, as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the *Uniform Commercial Code*, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the *"Leases"*); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

**1.6 Obligations.** The term *"Obligation(s)"*, as used in this Mortgage, shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to Lender; or are due indirectly by the Mortgagor to Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of $150,000.00 of the amounts outstanding pursuant to the terms of the Loan Documents as set forth herein. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

**1.7 Cross-Collateral and Future Advances.** It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

## 2. Representations, Warranties, Covenants

**2.1 Representations and Warranties.** The Mortgagor represents and warrants that:

(A) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(B) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the *"Permitted Encumbrances"*);

(C) The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(D) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by Lender; and

(E) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

**2.2 Recording; Further Assurances.** The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of Lender in the Property and the rights of Lender under this Mortgage. Mortgagor will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes Lender to file

financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the *Uniform Commercial Code* for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes Lender to file financing statements describing any agricultural liens or other statutory liens held by Lender. Mortgagor agrees to furnish any such information to Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as Lender may reasonably request for Lender (i) to obtain an acknowledgment, in form and substance satisfactory to Lender, of any bailee having possession of any of the Property that the bailee holds such Property for Lender, and (ii) otherwise to insure the continued perfection and priority of Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

**2.3 Restrictions on the Mortgagor.** The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of Lender in each instance:

    (A) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

    (B) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule (*"Hazardous Substances"*); or

    (C) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and Lender's interest therein against the claims of all persons and, unless Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or Lender's interest hereunder.

**2.4 Operation of Property.** The Mortgagor covenants and agrees as follows:

    (A) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823,3,0,5176-J20210329Y

03/2021
Page 4 of 16

any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(B) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to Lender, provide deductible amounts acceptable to Lender, name Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least thirty (30) days prior written notice to Lender. Such policies shall include (i) a mortgage endorsement determined by Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as Lender may request. The Mortgagor will furnish to Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(C) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of Lender, execute any assignment of the Leases except in favor of Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(D) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit Lender and Lender's agents, employees and representatives, at such reasonable times as Lender may request, to enter and inspect the Property and such books and records; and

(E) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823,3,0,5176-J20210329Y

**2.5 Payments.** The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by Lender, the Mortgagor shall deposit from time to time with Lender sums determined by Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at Lender's request, provides Lender with adequate cash security, in Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by Lender. If Mortgagor shall fail to pay such sums, Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

**2.6 Notices; Notice of Default.** The Mortgagor will deliver to Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

**2.7 Takings.** In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a *"Taking"*), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to Lender, describing the nature and extent thereof. Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for Lender and immediately pay the same to Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to Lender in amounts not exceeding the Obligations. Lender may apply such amounts to the Obligations in such order as Lender may determine.

**2.8 Insurance Proceeds.** The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to Lender and, at the option of Lender, be applied to the Obligations in such order as Lender may determine; provided, however, that if Lender shall require repair of

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823.3.0.5176-J20210329Y

03/2021
Page 6 of 16

the Property, Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for Lender and promptly paid to it.

## 3. Certain Rights of Lender

**3.1 Legal Proceedings.** Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

**3.2 Appraisals/Assessments.** Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

**3.3 Financial Statements.** Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by Lender.

**3.4 Leases and Rent Roll.** The Mortgagor shall deliver to Lender (i) during each calendar year and at such other times as Lender shall request a rent roll for the Property, in form acceptable to Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as Lender shall request executed copies of all the Leases.

## 4. Defaults and Remedies

**4.1 Events of Default.** *"Event of Default"* shall mean the occurrence of any one or more of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with Lender;

(B) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(C) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(D) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Lender;

(E) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(F) any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any

supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by Lender to have been false or misleading in any material respect when made;

(G) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(H) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(I) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code* 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(J) the service upon Lender of a writ in which Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(K) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(L) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(M) the termination or revocation of any guaranty of the Obligations; or

(N) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to Lender has been or may be impaired.

**4.2 Remedies.** On the occurrence of any Event of Default Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(A) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an Event of Default has occurred hereunder;

(B) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823.3.0.5176-J20210329Y

03/2021
Page 8 of 16

applicable law; provided, however, the entry by Lender upon the Property for any reason shall not cause Lender to be a mortgagee in possession, except upon the express written declaration of Lender;

(C) With or without taking possession, receive and collect all rents, income, issues and profits (*"Rents"*) from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints Lender as its true and lawful attorney with the power for Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. Lender shall be liable to account only for such Rents actually received by Lender. Lessees under the Leases are hereby authorized and directed, following notice from Lender, to pay all amounts due the Mortgagor under the Leases to Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(D) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a *"Portion"*), Lender shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such Portion without impairing its right to foreclose subsequently upon any other Portion or the entirety of the Property from time to time thereafter. In addition, Lender may in its sole and exclusive discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(E) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given Lender "control" over the Property or cause Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(F) Take such other actions or proceedings as Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of Lender's remedies

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the *Uniform Commercial Code* or under other applicable law.

Mortgagor agrees to the provisions of Sections 846.101 and 846.103(2) of the *Wisconsin Statutes*, or any successor provision, at Lender's option, permitting Lender, at its option upon waiving the right to judgment for deficiency, to hold a foreclosure sale of the Property comprised of real estate three (3) months after a foreclosure judgment is entered.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

**4.3 Advances.** If the Mortgagor fails to pay or perform any of its obligations respecting the Property, Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

**4.4 Cumulative Rights and Remedies.** All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

**4.5 Mortgagor's Waiver of Certain Rights.** To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.                                    2023092823.3.0.5176-J20210329Y
03/2021
Page 10 of 16

# 5. Miscellaneous

**5.1 Costs and Expenses.** To the extent permitted by applicable law, the Mortgagor shall pay to Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

**5.2 Indemnification Regarding Leases.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold Lender and each of its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

**5.3 Indemnification Regarding Hazardous Substances.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to Lender including repayment of all Obligations.

**5.4 Indemnitee's Expenses.** If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of the Mortgagor.

**5.5 Waivers.** The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.                                     2023092823.3.0.5176-J20210329Y
03/2021
Page 11 of 16

the nature thereof. No delay or omission of Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as *"Lender's Rights and Remedies"*) hereunder shall constitute a waiver thereof; and no waiver by Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under any such other agreement or transaction) but all Lender's Rights and Remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

**5.6 Waiver of Homestead.** To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including, without limitation, Section 815.20 of the *Wisconsin Statutes*.

**5.7 Joint and Several.** If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term *"Mortgagor"* shall include each as well as all of them.

**5.8 Severability.** If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**5.9 Complete Agreement.** This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersede all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**5.10 Binding Effect of Agreement.** This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

**5.11 Notices.** Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of Mortgagor or Lender, or if mailed by first

class, registered, or certified mail, return receipt requested, addressed to Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

**5.12 Governing Law.** This Mortgage shall be governed by the laws of the State of Wisconsin.

**5.13 Reproductions.** This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

**5.14 Jurisdiction and Venue.** The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Wisconsin, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

**5.15 JURY WAIVER.**

MORTGAGOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. MORTGAGOR CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

### Signatures

Executed under seal as of September 29, 2023.

**Mortgagor**

_Maria J. Woodruff_          9-29-23

Maria J. Woodruff            **Date**
                                     *Seal*

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

**Acknowledgment**

State of Wisconsin

County of _Waukesha_

This instrument was acknowledged before me on _9-29-2023_ by Maria J. Woodruff.

_[signature]_

_Notary Public_

_Dawn Schattschneider_
(Print Name)

My commission expires: _1-8-25_

This instrument was drafted by

Harrison Jenkins
30699 Russell Ranch Rd, Ste. 295
Westlake Village, CA 91362



Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

## EXHIBIT "A"
## Property Description

See Legal Description attached hereto and made a part thereof

---

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823.3.0.5176-J20210329Y

03/2021
Page 15 of 16

## Exhibit "B"

## Permitted Encumbrances

None

Real Estate Security Instrument-Commercial
© 2021 Wolters Kluwer Financial Services, Inc.
All rights reserved.

2023092823.3.0.5176-J20210329Y

Lot 4 and the West 27 feet of Lot 5 in Block 2 in Grasslyn Manor, being a Subdivision of a part of the Northwest 1/4 of Section 11, in Township 7 North, Range 21 East, in the City of Milwaukee, Milwaukee County, Wisconsin.

For Informational Purposes Only:

Parcel ID#: 266-0029-000
Parcel Address: 5715 W Capitol Dr, Milwaukee, WI 53216

(2023099772.PFD/2023099772/22)

# EXHIBIT C

DOC # 11382029
RECORDED
11/16/2023 06:10 AM
ISRAEL RAMON
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: 30.00
TRANSFER FEE:
FEE EXEMPT #:
***This document has been
electronically recorded and
returned to the submitter.***

**Record and Return To:**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362

**This instrument was Prepared By:**
**Velocity Commercial Capital, LLC, a**
**California Limited Liability Company**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362
(818)532-3705
Loan #: ███████

## ASSIGNMENT OF Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Velocity Commercial Capital, LLC, a California Limited Liability Company , 30699 Russell Ranch Rd Ste 295, Westlake Village, California 91362,** by these presents does convey, assign, transfer and set over to: **U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-4**
**190 South LaSalle Street, 7th Floor  Chicago, IL 60603,**, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon.
Original Mortgagor: **Maria J. Woodruff**
Instrument: **11370884** in Milwaukee County, **WI**
Property Address: **5715 West Capitol Drive, Milwaukee, WI 53216**
Parcel Tax ID:  **2660029000**
Legal: **Legal description attached**
Date: **11/15/2023.**
**Velocity Commercial Capital, LLC, a California Limited Liability Company**

By: _____
Name: **Jeff Taylor**
Title: **EVP, Capital Markets**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF **California**
COUNTY OF **Los Angeles** } s.s.

On **11/15/2023,** before me, **Ariana Beltran,** Notary Public, personally appeared **Jeff Taylor,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public: **Ariana Beltran**
My Commission Expires: **10/21/2026**
Commission #: **2422488**

Lot 4 and the West 27 feet of Lot 5 in Block 2 in Grasslyn Manor, being a Subdivision of a part of the Northwest 1/4 of Section 11, in Township 7 North, Range 21 East, in the City of Milwaukee, Milwaukee County, Wisconsin.

For Informational Purposes Only:

Parcel ID#: 266-0029-000
Parcel Address: 5715 W Capitol Dr, Milwaukee, WI 53216

(2023099772.PFD/2023099772/22)